May I please the court? Mayor Fetter for Experian. The district court here erred in two ways that I want to talk about today. First, by improperly quashing the subpoenas here, and second, by awarding attorneys fees and costs. So, starting with the subpoenas, I want to be clear to start off on what the district court held. The district court basically said that the only thing that mattered was the Dulworth, that's the underlying plaintiff's role in drafting and sending their dispute to Experian, and that it was irrelevant whether Stecklein & Rapp was acting as a credit repair organization. So, this is wrong in two ways that I'd like to discuss in order. The first, which I will probably take more time to discuss, is that it was wrong to hold that it was irrelevant whether Stecklein & Rapp was a credit repair organization. The second is that even if the district court had been correct that only what the Dulworths did themselves was relevant, part of the subpoenas was actually aimed at that, at determining what their role was here, because Experian was unable to get full information on that from other discovery in the underlying case. So, turning to the question of whether the district court was wrong or right to hold that it was irrelevant whether Stecklein & Rapp was a credit repair organization, and therefore that their Experian was not entitled to any discovery. I was hoping you'd do the statutory interpretation part of this, which is why does it matter under the plain language of the statute whether the consumer was involved in writing the letter? Isn't it enough if the consumer just told the lawyer, hey, go write this letter on my behalf to Experian? I don't understand where this requirement came from. It's not in the plain text from what I can tell. Right. That's true. And actually, I mean, I think that the way that, you know, one important wrinkle here is the way that it's generally been interpreted. If somebody goes to a lawyer and the lawyer sends a letter as the lawyer saying I'm submitting this dispute for my client, that gets treated as coming directly from the consumer. And that's actually, there's a little bit of a kind of bank shot here. It's a little complicated. But that has a lot to do with why it's relevant whether Stekline WRAP is acting as a credit repair organization because the courts have had to distinguish between a law firm and lawyers are not excluded from being credit repair organizations. If they are doing the things that meet the requirements of the Credit Repair Organizations Act, then they're a credit repair organization and they're not going to be treated as lawyers. But let me take it back to the language of statute so that, because I know that's where you wanted to start. 1681I says that basically the duty is triggered if any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly or indirectly through reseller of such dispute. So it's got to be a dispute by the consumer and it has to be, according to the plain language, the consumer that notifies the agency and if the consumer does it directly, it can't be a third party. Now as I say, if you hire a lawyer and the lawyer says representing Mr. or Ms. Consumer submitting it, that gets treated as being the consumer. And that's how I read the statute because the indirectly and the directly, it's either sending it directly to the credit reporting agency or indirectly, which will eventually get to the credit reporting agency through the reseller. And then if that is true, then isn't the only relevant question, did you hire these people to contact them on your behalf? Because that answers everything. So I think the answer is that that's not the only relevant question and I think that in part that that question puts too much focus on the word directly because it also, at least as important as that, it has to be the consumer that notifies the agency. The plain language is the consumer notifies the agency. But we just talked about that. The lawyer can, if they're hired as lawyer, they could contact the agency. Right, but not anyone else. Right. So that if it goes directly from a third party credit reporting agency, that's not from the consumer. Agreed, but that would be, presumably that would be taken care of by the fact that, by asking them whether they had a lawyer-client relationship and ask these people to send it to the agency. So, yes, except, and I think one telling thing here that you'll see, and I'm going to try not to make this too much of a tangent, but the letter here doesn't come out of law from letterhead, which is often the case with credit reporting agencies. One of the things that you'll see, to actually describe the Gill case from the Ninth Circuit that's in our briefs, quote some of the legislative history of the Credit Repair Organizations Act. One of the big problems underlying all of this is that you've got a process here for challenging errors in your credit record. What credit repair organizations have done over the years is that they try to overwhelm the system by challenging things without regard to whether there actually is a basis for challenging them or not. The credit reporting agency only gets 30 days to do it. If they can't get all of them done within 30 days, it comes off the record. It's kind of a gaming of the system, and that's in the legislative history of the Credit Repair Organization Act. It continues to be a big issue, and so it then becomes important to determine whether you've got people whose business model is credit repair or you have a lawyer that someone goes to with a problem. That's why you can't just say, well, does the person have a lawyer? Because under the terms of the statute, you've actually got to figure out, based on what they're charging for and what they're holding themselves out as being able to do, whether they're a credit repair organization. One thing I should say that I think is also important here is that this discovery proceeding was probably not the right place to get an ultimate answer to that question because you're coming into this with, there is a fair amount of case law out there and agency guidance that has said, actually, it's not that simple. It does matter whether this law firm is acting as a credit repair organization. That's something that at least potentially is going to be an issue. Remember, this is in a different circuit where that circuit may still be, whatever the holding is here, may be following the cases that say it matters and the agency guidance that says that it matters and should Experian have the discovery to be able to make the case. Now, maybe they would argue there that actually none of that matters and it's a legitimate dispute, but Experian wants to be able to put on the case there. Even if this is the right place for it, because you do need to determine whether, it also depends, I think, what you consider the rule, what you consider the exception. Under the language of the statute, lawyer submitting on behalf of client is the exception in the sense that it says the consumer has to submit it, but we carve out that when you're represented by a lawyer, we treat that as the equivalent of the consumer. But if you're dealing with a credit repair organization, then you're not in that carve out and it's got to come directly from the consumer and the consumer has to have a role in it. Now, let me go briefly to the second thing that the district court said, all that matters is whether the Dulworths, the consumers here, had a role in it. That was part of the subpoena here, like did they have any role in drafting it, did they have any role in identifying the issue, any of that, and did they have any role in reviewing it and mailing it. They couldn't really get all of that out of the underlying discovery, though they tried, because one of the plaintiffs has a condition that prevents him from, has a memory loss condition. The other plaintiff didn't recall involvement, but it was far from clear. The magistrate judge there said, I agree you tried to do this before seeking the other discovery, so there still should have been some discovery allowed, even if it weren't the credit repair organization discovery. I want to save a little time, let me talk briefly about the attorney's fees, and all I want to say about that is the district court just sort of treated that as almost automatic, like this shouldn't have. Before you go on to that counsel, I'm sorry, you asked for a lot more in the subpoena than just those particular details, so one question I have is are you asking for all or nothing here? Or is there some possibility that perhaps some of this should be allowed and some not? I think that's certainly a possibility, and I think one of the things that's important here is that there's an affidavit in the record that the district judge seems to, if you look at page 212 of the appendix, where an affidavit describing how Experian attempted to negotiate and said, look, we can narrow, we can talk about narrowing it. This is before this got, went to court, and the stack line reps said, no, we want to litigate it. So Experian is certainly open to something narrowed, more targeted, and Of course, you could just file something more narrowly, right? Well, I mean, ordinarily you would talk about what's going to be a burden for the other side, what you really need, what's easy for them to provide. But certainly it's not an all or nothing proposition. That's all I want to know, thank you. And on the fees, the district court treated it as almost automatic and didn't analyze the requirements of any rule for awarding attorneys' fees, certainly not the Rule 45 requirements. There was a passing reference to Experian not trying to narrow the issues to keep it from going to court. But as I just said, I mean, there's an affidavit saying we did try to. And it's probably a declaration and not an affidavit. You're about to exhaust your time. Yes. So, yes, I will sit down. Let me just ask one question. It's on fees. The reasonableness of the fees, are you challenging the amount? No. Okay, I just wanted to ask that. Thank you. Okay, thank you. And counsel, you'll have one minute. It rounds up to one minute on the rebuttal. Okay. Mr. Freedman. May it please the court, Robert Freedman for Appellee Stecklein and Rapp. Judge Strass, I want to start with where you started, which is the plain text. And I think the answer that we heard is that this isn't in the plain text, this distinction between credit repair organizations, CROs, and friends, family members, and lawyers, on the other hand. And that's enough to resolve the central case. Counsel, there's a whole law on credit repair organizations, though. So tell us, are you a credit repair organization? Stecklein and Rapp is not a credit repair organization, but it also doesn't matter for this appeal and the underlying case because what the Dulworth's claim arises under is Section 1681I. And the directly requirement is about getting the dispute to the credit reporting agency, Experian and Equifax, TransUnion, those sorts of entities, and not sending it to something like the creditor itself in this case or in the Dulworth's underlying case, Ally Financial. That's the distinction that directly is there for. We just heard that part of the reason directly is there is because CROs, credit repair organizations, take advantage of this 30-day trigger. That after 30 days, if the credit reporting agency is too overwhelmed, it has to just remove the materials. But the directly requirement has been in the statute since 1970. There was no 30-day requirement in 1970. There were no credit repair organizations in 1970. Those regulations didn't come until 1996. So when you think about the history and the context of this requirement that disputes be sent directly, it can't be to have gotten at these problems because they didn't exist when the requirement was put in. Do you agree, though, because of the word consumer in the statute, that you at least had an interest in knowing whether you were actually representing the consumer or Stecklein was representing the consumer when the letter was sent? Because some other third party who sends it on the consumer's behalf who's not related to the consumer would not be the consumer sending a letter or correspondence to Experion. Yes. It matters whether it was non-consensual and done without the Dulworth's consent. But that isn't the issue in this case. Ms. Dulworth was quite clear. You look at her deposition testimony. It's in appendix pages 42 through 46, the relevant portions. What she says is, I tried to call Ally Financial first twice on my own. That process was, quote, a bear. I then went to Stecklein and Rapp. I communicated with them often. That's appendix page 44. It was my wording that I gave to them. They helped me get it out. And there's no reason why in the word directly in a statute that, under its express legislative declaration of purpose, is to make this process, quote, more fair and equitable for the consumer, Congress would have hidden this tacit prohibition on receiving help. Think about somebody who doesn't speak the same language, or doesn't speak English, and needs to submit a dispute. It can't be that they can't receive help in submitting a dispute. Somebody who is visually impaired, it can't be that they can't have somebody write it up for them and send it into the mail. This isn't a prohibition on receiving help. It's about channeling disputes to the CRAs, not to third parties that act independently like the furnishers themselves, the creditors, or even a governmental agency. I do want to also touch on this idea of narrowing. That's the central defense to the attorney's fees. And the question on attorney's fees is itself quite narrow. Rule 45 says that the district court must impose a sanction if it finds an undue burden. And as you just heard, Judge Strauss, they aren't challenging the reasonableness of the fees. So the sole question is, did the district court abuse its discretion in finding an undue burden here? And it didn't. I'll start with narrowing, but then I want to shift to burden. So on narrowing, it's not correct to say that Stefan and Raft's counsel didn't engage in the narrowing process. If you look at ECF document 14-2 at page 10, we say, in the meantime, if you'd like to withdraw or amend some of your requests slash topics, feel free. As written, they are all objectionable. We invited them to narrow. They didn't. And the district court was attuned to this problem. The district court at page 256 criticized Experian for, quote, not giving them any relief. 258, again, having given an inch. And the district court found in its order awarding fees, this is at 447 of the appendix, that there was no good faith narrowing. And the record fully supports that. It certainly wasn't an abuse of discretion. And the idea also that you can send out an incredibly broad subpoena, as was the case here, and then just put out a generic offer to narrow without actually making that concrete, it would create really bad incentives in two ways. First, it would allow an issuer of a subpoena to just start with a really wide negotiating position, throw out a generic offer, and then force the receiving party to object to things that are obviously objectionable, and there's no consequence for that. Second, it would discourage the issuer of the subpoena from trying to get it narrowed to begin with. And that's problematic in itself because the point of Rule 45, the reason why it's a must-impose-a-sanction, is that the rules are more protective of non-parties to the litigation. On the burden itself, Judge Arnold, you pointed out that this goes way beyond what Experian wants to know. The definition of a credit repair organization under the CROA, Judge Benton, is slim. It's, did you represent or provide... Oh, sorry, excuse me. Did you provide or represent that you would provide services to improve a person's credit history or record for a fee? The subpoenas here go way beyond that. Four years' worth of revenue, four years' worth of client identities and locations, all documents related to co-counseling agreements. If you just look at Document Request 1 on its own, that's all documents related to the drafting of disputes. As the district court recognized at Appendix Page 256, and Experian didn't contest, that's the entire case file for any consumer dispute. So Stechland and Rapp's going to need to collect all communications with counsel, all emails and text messages, all external communications, all litigation documents, drafts. That's going to be an exhaustive privilege review. The In Re Modern Plastics case from the Sixth Circuit that we cited, that recognizes that that sort of privilege review, as does the advisory committee notes to Rule 45, that's indicative of an undue burden. It should be apparent for a sophisticated corporate litigant like Experian. And you can compare what Experian did here with what it did in the Cardinale case, which is, you know, it leans pretty heavily on that. And Cardinale got it wrong on relevance. It didn't discuss the case law or the statute. But it's illustrative of why the burden here was so great. In Cardinale, Experian started with a narrow deposition subpoena. It said, just give us testimony, authenticating websites, and your general fee structure. That would have been a narrow subpoena here to test this legal theory, but Experian went way beyond it. And even when the witness in Cardinale proved obstinate and didn't cooperate, so Experian pursued a record subpoena. That record subpoena started like it did here, but Experian narrowed before it got to the district court, something that it didn't do here. It dropped multiple requests. It narrowed others drastically. Counsel, I have one concern about this order with respect to sanctions, attorneys' fees, and so forth. I wasn't clear exactly what the basis of it was from the order itself. It was sort of taciturn. The basis was Rule 45, so we moved for attorneys' fees. I understand Rule 45, but there was no discussion of the considerations that were relevant as I read the record. It was just kind of a blank result without a great deal of underlying analysis. That's my difficulty. So the court's analysis appears in two places. One is in the hearing transcript. You can see in multiple places the court is noting the undue burden, which is the Rule 45 trigger. So at page 244, the district court says, these are incredibly broad, burdensome requests. At 254, it says, it's such a broad subpoena request. 248, why in the world, end quote, do you need prior clients' names? 256, you're asking for the whole case file. And those don't appear in the order, but it's important to understand the context. But you're talking about in the discussion of why it should be quashed. Is that correct? That is in the hearing transcript, but that informs the order. All right, but I just want to understand. Your argument is that it will inform, that somehow we're supposed to report all that lore into the order, right? Is that your argument? Well, there are two aspects of my argument. Okay, I just wanted to understand what you're saying. That's all right. That's a good argument. It might be, or at least that makes sense. I do want to add to it, though, which is the context in which this order came about. Experience served these subpoenas at the very end of the discovery period in the Dulworth's underlying actions, so this was a rushed proceeding. And if you look at the very end of the hearing transcript, Judge Ketchmark remarks, I'm trying to move as fast as I can here. I don't normally move on civil cases this quickly. And she says, I'll try and get you an order in two days. So she was moving quickly to accommodate the parties. And then the second place where you can see that the judge found that there was an undue burden is in the order awarding the fees, the amount of fees. That's at page 447 of the record. And there she says, there was no good faith attempt to narrow. So you combine all that, and it's clear that Judge Ketchmark was attuned to the problem of an undue burden, and that was the basis for fees. If you also look at... Well, so, I'm sorry, finish your sentence. No, please go ahead. And so the subpoena was quashed on the ground that it was not seeking relevant evidence. But it seems to me that there was some talk in the record by the judge as well about undue burden, and I think those are two different criteria. But as I read the rules together, you could say that the evidence was relevant, but nevertheless, what you're asking for involves an undue burden. Isn't that correct? You can. Proportionality. Those are separate. So which is it here? It wasn't relevant, it was an undue burden, or both? I think Judge Ketchmark got it exactly right in that she quashed the subpoena on the grounds that it was irrelevant. And she could have quashed it as irrelevant or as unduly burdensome, but she quashed it as irrelevant. But on attorney's fees, her focus, if you look again at page 447, it didn't say because these are irrelevant. It's because there was no good faith narrowing. That reflects that she was focused on the issue of undue burden, and that's proper. If she had said I'm awarding attorney's fees just because it's irrelevant, that would have been problematic, but that's not what she did. She got the standard right. And it is the kind of extreme over-breath of these subpoenas that lends itself to the conclusion that there can be no abuse of discretion on that. I do want to touch on what Mr. Fetter raised as the second ground or narrower ground and said you can, I guess, preserve part of these requests. That's not an argument that was presented in this court. If you look at their briefing, you're not going to see, well, there's a different relevancy analysis for these subpoena topics from the vast majority that go to credit repair organization status. It's an across-the-board argument that credit repair organization status or business, that's what's relevant. And that's why Judge Ketcham and I quashed it all as irrelevant below, because the argument on those few topics that do kind of as written on their face go to the dullest involvement. The argument wasn't that Experian needed those topics to determine whether Ms. Dullworth was involved in the dispute. I don't take them to be contesting that. But they wanted more details about which specific aspects. So at page 62 and page 245 of the appendix, you can see this. They're saying which specific portions of the letter did Ms. Dullworth provide her wording for. What was the specific role of case mail, the software that's And the problem with that is what the case law says, what the statute by its plain terms says, is that all that matters is whether the consumer was involved in the dispute. These details don't matter and are irrelevant. It's relevant under Experian's misguided kind of sliding scale approach, and that's why they wanted it. But the sliding scale approach doesn't find any basis in the text. But most of the cases say that it's relevant, right? I don't think that's an accurate reading of the cases. The vast majority of cases say that all that matters is whether the consumer had any involvement. There is no sliding scale. I'm sorry, whether the consumer had any involvement. So here Ms. Dullworth went far beyond. Not some significant involvement, just anything? Yes. Why isn't Judge Strauss's question relevant here? Why isn't it just enough that you show that you were hired? Why isn't that? I think it could be. If the consumer says, I want you to help me dispute this aspect of my credit report, and then approves and signs off on it, that's all that there needs to be. And that's what the Ninth Circuit, you're at no risk of creating a circuit split, frankly, either way, because the Ninth Circuit's decision was narrow. It said all we're addressing is when there's no involvement. It held open, even with the credit repair organization, if that provides assistance. You can look at the Henry and the Pfeffer case that we cite. Those are credit repair organizations that provided assistance, and the claim was allowed to go forward because the consumer was involved in the dispute. I briefly want to touch on the agency guidance, if I can. The FTC's guidance can be read consistently with the case law. You can see that in the Norman case from the Eastern District of Pennsylvania. But even if you adopt experience reading, what determines relevance is the statute and the statute's plain text. Unreasoned agency guidance that doesn't cite the statute can't change that. Thank you, Your Honors, for your time. Thank you for the argument. Mr. Bader. Okay, thank you. Sorry, just a second. I apologize. You can go. It's not working. There we go. Okay. Sorry about that. Thank you. All right. So just briefly, the set line wraps interpretation of the statute that direct just has to do with who receives it, and any third party can send it. No case and no agency has ever interpreted it that way. That would create a circuit split because the upshot of that would be that you could have third party sending it in direct only means. And, of course, we don't say there is any prohibition on receiving help. That's covered in the briefs. The basis for the judge's ruling, yeah, if you look at the actual opinion, judge says defense counsel did not attempt in good faith to narrow its disputed inquiries to avoid the necessity of these proceedings. That's like the burden that she's talking about is having to go through the proceeding. And, of course, as to the good faith attempt to narrow, I don't think that it's possible to say we won't take you up on your offer to discuss narrowing it, and then say, well, you have an offer to narrow it. Thank you for the argument. Thank both counsel for your arguments. Cases number 23-1879 and 23-2977 are submitted for decision by the court. Ms. Henderson.